IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JOE HAND PROMOTIONS, Inc.<br><br>Plaintiff,<br><br>vs.<br><br>JUSTIN SHANK and JWS INVESTMENTS, LLC, doing business as Jake's Sports Bar & Grill,<br><br>Defendants. | 8:22-CV-243<br><br>MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS |

Plaintiff Joe Hand Promotions, Inc. (JHP), filed this lawsuit against Justin Shank and JWS Investments, LLC, d/b/a Jake's Sports Bar & Grill (collectively, Defendants). Filing 1 at 1. In a Memorandum and Order filed December 20, 2024, the Court granted JHP's Motion for Summary Judgment. This case is now before the Court on JHP's January 2, 2025, Motion for Attorney's Fees and Costs. Filing 37. For the reasons stated below, JHP's Motion is granted.

## I. INTRODUCTION

Much of the pertinent factual and procedural background to the underlying lawsuit was set out in the Court's Memorandum and Order on Plaintiff's Motion for Summary Judgment. *See* Filing 36 at 3–6. Hence, the Court's summary of the factual and procedural background to this case in this ruling will be brief.

JHP alleged that Defendants engaged in the unauthorized and unlicensed distribution of an ultimate fighting match for which JHP held exclusive broadcasting rights, including all undercard bouts and commentary. Filing 34-1 (¶ 2). The Complaint sought statutory damages for satellite piracy in violation of 47 U.S.C. § 605 or alternatively for cable piracy in violation of 47 U.S.C. § 553. Filing 1 at 1 (¶ 1), 4-5 (¶¶ 16-18). On a Motion for Summary Judgment, JHP narrowed its

1

claim to one for use of a satellite receiver to receive the pirated program under 47 U.S.C. § 605. Filing 34-2 at 1.

In a Memorandum and Order filed December 20, 2024, the Court granted JHP's Motion for Summary Judgment—to which Defendants filed no opposition—and awarded JHP damages in the amount of $1,345.00 jointly and severally against Defendants. Filing 36 at 15. The Court directed JHP to submit a request for attorney's fees in compliance with applicable local rules within fifteen days of the date of its Order. Filing 36 at 15. Finally, the Court stated, "Final Judgment shall enter upon the determination of an appropriate award of attorney's fees." Filing 36 at 15.

The focus here is on the basis for JHP's request for attorney's fees and costs. In a Declaration, JHP's counsel explains that JHP seeks attorney's fees at the rate of $300 per hour for the time of a partner with fifteen years of experience and fourteen years with a firm litigating federal piracy claims on behalf of commercial pay-per-view distributors of major televised sporting events. Filing 37-1 at 1 (¶¶ 3, 5). JHP's counsel explains that JHP also seeks paralegal fees at the rate of $150 per hour for a certified paralegal with over twelve years of experience. Filing 37-1 at 1 (¶¶ 4, 6). More specifically, JHP's counsel avers,

> [O]ur firm's billable fees for my time equals six thousand three hundred thirty dollars ($6,330) (21.1 hours at rate of $300/hour) and our paralegal fees equals six hundred forty-five dollars ($645) (4.3 hours at rate of $150/hour) for a total of six thousand nine hundred seventy-five dollars ($6,975).

Filing 37-1 at 2 (¶ 8). The fees sought are itemized in Filing 37-2.

JHP's counsel also provides the following itemization of costs claimed:

Additionally, Plaintiff should recover costs of four hundred two dollars ($402.00) to file the complaint, two hundred thirty dollars ($230.00) to effectuate service, $17.36 to serve discovery requests on Defendants, $115.00 for a Skip Trace and SSN Search to locate Justin Shank's updated address, and $18.45 to serve a Court Order on the Defendants. *See* Doc. No. 1; Exhibits B-E. In total, Plaintiff is entitled

to costs in the amount of seven hundred eighty-two dollars and eighty-one cents ($782.81).

Filing 37-1 at 2 (¶ 9). The invoices for service of process are attached to JHP's Motion at Filing 37-3, showing a charge of $135 for service on Justin Shank and a charge of $95 for service on JWS Investments. Filing 37-3 at 2–3. The Federal Express shipping receipts for $17.36 and $18.45 are attached as Filing 37-4 and Filing 37-6, respectively. Finally, the invoice for $100 for the skip trace and $15 for the SSN search for Justin Shank is attached as Filing 37-5.

Just as with JHP's Motion for Summary Judgment, Defendants filed no opposition to the pending Motion for Attorney's Fees and Costs.

## II. LEGAL ANALYSIS

### A. Consequences of Defendants' Failure to Oppose JHP's Motion for Attorney's Fees and Costs

In its Memorandum and Order on Plaintiff's Motion for Summary Judgment, the Court explained the consequences under NECivR 56.1 of Defendants' failure to oppose that Motion. Filing 36 at 2–3. A different local rule applies to "[a]ll miscellaneous motions, applications, requests, and petitions," such as the Motion for Attorney's Fees and Costs now before the Court. NECivR 7.1. Specifically, NECivR 7.1(b)(1)(C) states the effect of failure to file an opposition to such motions, as follows: "Failure to file an opposing brief is not considered a confession of a motion but precludes the opposing party from contesting the moving party's statement of facts." Thus, Defendants have forfeited the opportunity to contest any of JHP's statements of facts in support of its Motion for Attorney's Fees and Costs.

### B. Applicable Standards

The Eighth Circuit Court of Appeals has addressed attorney's fees under 47 U.S.C. § 605 only in passing. Thus, the Court turns to a recent decision of the Fourth Circuit Court of Appeals for guidance. The Fourth Circuit explained,

3

> "[U]nder the default American rule that each party bears its own attorneys['] fees," a "prevailing party in a suit is not entitled to recover reasonable attorneys['] fees and costs from the losing party." *Brat v. Personhuballah*, 883 F.3d 475, 480, 484 (4th Cir. 2018) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), which provides a history of this common-law rule). Congress, however, has altered this rule to include a statutory fee-shifting provision, providing that a court "*shall* direct the recovery of full costs, including awarding reasonable attorneys' fees to an *aggrieved party who prevails*" under § 605(a). 47 U.S.C. § 605(e)(3)(B)(iii) (emphases added). A prevailing party "is one [that] has been awarded some relief by the court." *Goldstein v. Moatz*, 445 F.3d 747, 751 (4th Cir. 2006) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 603, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001)). And the term "some relief" refers to relief that "create[s] the material alteration of the legal relationship of the parties necessary to permit an award of attorney[s'] fees," *id.* (quoting *Buckhannon*, 532 U.S. at 604, 121 S.Ct. 1835), by "modifying the defendant's behavior in a way that directly benefits the plaintiff," *Gilbert v. Monsanto Co.*, 216 F.3d 695, 702 (8th Cir. 2000) (quoting *Farrar v. Hobby*, 506 U.S. 103, 111–12, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992)).

*Sky Cable, LLC v. DIRECTV, Inc.*, 23 F.4th 313, 317–18 (4th Cir. 2022) (emphasis in the original).

The Eighth Circuit Court of Appeals has explained the standards generally applicable to determination of a reasonable attorney's fee, as follows:

> "The starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates." *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)); *see also Harrison v. Harris-Stowe State Univ.*, 626 S.W.3d 843, 860 n.5 (Mo. Ct. App. 2021) (stating that "[t]he 'lodestar' is the starting point in determining reasonable attorneys' fees"). "As a general rule, a reasonable hourly rate is the prevailing market rate, that is, 'the ordinary rate for similar work in the community where the case has been litigated.'" *Moysis v. DTG Datanet*, 278 F.3d 819, 828 (8th Cir. 2002) (quoting *Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001)). "The court 'has great latitude to determine a reasonable hourly rate because it is intimately familiar with its local bar.'" *Burton v. Nilkanth Pizza Inc.*, 20 F.4th 428, 431 (8th Cir. 2021) (quoting *Childress v. Fox Assocs., LLC*, 932 F.3d 1165, 1172 (8th Cir. 2019)). "When calculating the lodestar, a district court need not accept counsel's submission of hours as conclusive but should exclude from that total those hours that were not reasonably expended on the litigation." *Fires v. Heber Springs Sch. Dist.*, 565 F. App'x 573, 575 (8th Cir. 2014) (unpublished per curiam) (citing *Hensley*, 461 U.S. at 433–34, 103 S.Ct. 1933). "Although the district court need not explicitly state which hours it finds reasonable, it must at least calculate the hourly rate and the reasonable number of hours worked." *Vines v. Welspun Pipes Inc.*, 9 F.4th 849, 856 (8th Cir. 2021) (citing *Fires*, 565 F. App'x at 576). "In sum, the court should calculate the reasonable hourly rate and the

4

reasonable number of hours worked [and] use these two variables to calculate the lodestar ....” *Burton*, 20 F.4th at 431. “[T]here is a 'strong presumption' that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee.” *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010).

"After calculating a fee award using either the lodestar method ... , district courts generally evaluate 'the ultimate reasonableness of the award ... by considering relevant factors ....'" *League of Women Voters of Mo. v. Ashcroft*, 5 F.4th 937, 941 (8th Cir. 2021) (second alteration in original) (quoting *In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 977 (8th Cir. 2018)). "Although there is no one methodology for calculating an award of fees, it is important 'for the district court to provide a concise but clear explanation of its reasons for the fee award.'" *Marez v. Saint-Gobain Containers, Inc.*, 688 F.3d 958, 966 (8th Cir. 2012) (quoting *Hensley*, 461 U.S. at 437, 103 S.Ct. 1933).

*Jet Midwest Int'l Co. v. Jet Midwest Grp., LLC*, 93 F.4th 408, 420–21 (8th Cir. 2024) (footnotes omitted). As to "other factors," this Court applying Nebraska law has identified "the nature of the litigation, the time and labor required, the novelty and difficulty of the questions raised, the skill required to properly conduct the case, the responsibility assumed, the care and diligence exhibited, the result of the suit, the character and standing of the attorney, and the customary charges of the bar for similar services." *Ludlow v. BNSF Ry. Co.*, No. 4:12CV3113, 2014 WL 2155086, at *1 (D. Neb. May 22, 2014) (quoting *Fisher v. PayFlex Systems USA, Inc.*, 829 N.W.2d 703, 714 (Neb. 2013)), *aff'd*, 788 F.3d 794 (8th Cir. 2015).

### C. Application of the Standards

1. *JHP Is a Prevailing Party under § 605(e)(3)(B)(iii)*

To recover attorney's fees under § 605(e)(3)(B)(iii), JHP must first be a "prevailing party" under § 605(a). 47 U.S.C. § 605(e)(3)(B)(iii) (providing that a court *"shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails"* under § 605(a)). JHP is a "prevailing party" because it "has been awarded some relief by the court" on its claim under § 605(a), when this Court granted summary judgment in JHP's favor on its § 605(a)

5

claim. Filing 36 at 10–12. Furthermore, the Court awarded JHP damages in the amount of $1,095.00, Filing 36 at 12–13, and $250 in enhanced damages for a willful violation, Filing 36 at 15, thus "creat[ing] the material alteration of the legal relationship of the parties" and "modifying the defendant's behavior in a way that directly benefits [JHP]." *Sky Cable, LLC*, 23 F.4th at 317–18. Thus, JHP is a prevailing party entitled to an award of costs and attorney's fees. 47 U.S.C. § 605(e)(3)(B)(iii).

    2.  *The Hourly Rates and Hours Claimed Result in Attorney's Fees Totaling $6,975*

Because JHP is entitled to an award of costs and attorney's fees, the Court turns next to the lodestar calculation by multiplying the number of hours reasonably expended by the reasonable hourly rates. *Jet Midwest*, 93 F.4th at 420. Based on the Court's familiarity with the local bar and the prevailing market rate for similar work, *see id.*, the Court finds that both the partner's claimed rate of $300 per hour and the paralegal's claimed rate of $150 per hour are reasonable. Indeed, these are the same hourly rates awarded in a case in this district involving the same plaintiff and the same law firm. *See Joe Hand Promotions, Inc. v. Cantina El Sol, LLC*, No. 8:22-CV-113, 2023 WL 4295507, at *4 (D. Neb. June 30, 2023), *aff'd*, No. 23-2730, 2023 WL 8946762 (8th Cir. Dec. 28, 2023).

Turning to the hours claimed, the Court recognizes that it "need not accept counsel's submission of hours as conclusive but should exclude from that total those hours that were not reasonably expended on the litigation." *Jet Midwest*, 93 F.4th at 420 (citation omitted). The itemized timesheet provided in this case has allowed the Court to review the time claimed for the tasks involved. *See* Filing 37-2. The Court finds no hours that were not reasonably expended on the litigation. *Jet Midwest*, 93 F.4th at 420. As JHP's counsel avers, lead counsel's time of 21.1 hours at $300 per hour results in a fee of $6,330, and the paralegal's time of 4.3 hours at $150 per hour results in a fee of $645, and a total fee of $6,975. Filing 37-1 at 2 (¶ 8).

*3. Nothing in the Record Rebuts the Presumption of Reasonableness of the Lodestar Figure*

The Eighth Circuit reiterated that "[t]here is a 'strong presumption' that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Jet Midwest*, 93 F.4th at 420 (quoting *Perdue*, 559 U.S. at 554). This case does not present such "rare circumstances." *Id.* Indeed, considering the ultimate reasonableness of the award by considering relevant factors, *id.*, the Court finds no factors warranting a reduction. It is true that JHP initially brought claims for both violation of 47 U.S.C. § 605, prohibiting satellite piracy, and violation of 47 U.S.C. § 553, prohibiting cable piracy. Filing 1 at 1 (¶ 1), 4–5 (¶¶ 16–18). However, the alternative claim was abandoned once discovery revealed that § 605 was the appropriate basis for the claim, where § 553 and § 605 are mutually exclusive. Filing 36 at 5. The Court does not deem this to be an example of "limited success" that could warrant a reduction in the fee award. *See Ludlow*, 2014 WL 2155086, at *1 (explaining that "other factors" relevant to the reasonableness of the ultimate award under Nebraska law include "the result of the suit"). Rather, the alternative claims were justified in the first instance, and both were maintained only until it was clear from discovery which statute provided the proper basis for the claim.

Consequently, the Court awards JHP the full lodestar figure of $6,975 in attorney's fees.

*4. The Costs Claimed Are Reasonable and Adequately Supported*

Section 605(e)(3)(B)(iii) also directs the award of "full costs" to a prevailing party. 47 U.S.C. § 605(e)(3)(B)(iii). The applicable local rule provides, "A party applying for attorney's fees and related nontaxable expenses must support the application with appropriate and reliable evidence and authority, including affidavits and any written argument." NECivR 54.3(b). The

7

Court finds that JHP has provided appropriate and reliable evidence for its claims for costs. As mentioned above, the invoices for service of process are attached to JHP's Motion at Filing 37-3, showing a charge of $135 for service on Justin Shank and a charge of $95 for service upon JWS Investments. Filing 37-3 at 2–3. The Federal Express shipping receipts for $17.36 and $18.45 are attached as Filing 37-4 and Filing 37-6, respectively. The invoice for $100 for the skip trace and $15 for the SSN search for Justin Shank is attached as Filing 37-5. Finally, the docket also reflects that JHP paid a filing fee of $402. Filing 1 (docket annotation). These costs total $782.81. Filing 37-1 at 2 (¶ 9).

Consequently, JHP is also awarded $782.81 in costs.

### III. CONCLUSION

Upon the foregoing,

IT IS ORDERED that JHP's January 2, 2025, Motion for Attorney's Fees and Costs, Filing 37, is granted as follows:

1. JHP is awarded $6,975 in attorney's fees; and

2. JHP is also awarded $782.81 in costs.

IT IS FURTHER ORDERED that final judgment shall enter awarding damages to JHP in the amount of $1,345.00, attorney's fees in the amount of $6,975, and costs in the amount of $782.81.

Dated this 4th day of February, 2025.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge